NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted June 28, 2007[*]
Decided July 3, 2007

Before

**Hon.** FRANK H. EASTERBROOK, Chief Judge

**Hon.** JOHN L. COFFEY, Circuit Judge

**Hon.** DANIEL A. MANION, Circuit Judge

No. 06-2510

GLORIA JEAN DIXON,
    *Plaintiff-Appellant*,

    *v.*

ILLINOIS DEPARTMENT OF NATURAL RESOURCES,
    *Defendant-Appellee*.

Appeal from the United States District Court for the Southern District of Illinois.

No. 02-1208-CJP
Clifford J. Proud, *Magistrate Judge*.

## Order

This action under Title VII of the Civil Rights Act of 1964 was tried before a magistrate judge, with the parties' consent. See 28 U.S.C. §636(c). At the close of plaintiff's case, the magistrate judge entered judgment as a matter of law for the Illinois Department of Natural Resources, the only remaining defendant. Gloria Dixon, the plaintiff, originally sued some of her supervisors, but claims against them were dismissed before trial, and Dixon has not appealed. Nor has she appealed the dismissal of her claim under the Age Discrimination in Employment Act—though she has appealed from grants of summary judgment in favor of the Department on some additional theories under Title VII. We return to those later.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. See Fed. R. App. P. 34(a); Cir. R. 34(f).

The claim that went to trial rested on 42 U.S.C. §2000e–3(a), which forbids retaliation against anyone who makes or supports a charge of discrimination. Dixon, who worked as an office assistant at Frank Holton State Park, was suspended in December 2001, reinstated, then suspended again in March 2002 and fired that May. She attributes these actions to her internal charge of race, sex, and age discrimination, made on November 1, 2001.

The magistrate judge concluded that no reasonable juror could find that the charge of discrimination caused the adverse actions. (The judge gave other reasons that we need not consider.) Although the first suspension occurred in December 2001, the events that led to it occurred in September, and Ruth Kendall, Dixon's immediate supervisor, recommended a suspension that very month. A grievance first lodged in November could not have caused a recommendation already on file for more than a month. Dixon maintains that her complaints about discrimination predate Kendall's recommendation in September, but the evidence does not support that position. Dixon made *complaints* (and in number), but under the collective bargaining agreement (and outside it) rather than under federal law. Even if we accept Dixon's preferred date (May 1, 2001) it is hard to see a benefit to her; Kendall made her initial complaints against Dixon through the employer's hierarchy, charging Dixon with both discrimination and workplace violence, in March and April 2001.

As for the second suspension and discharge: the immediate cause was an incident in which Dixon called Kendall a heifer and told her that washing her hair and applying more makeup would improve her disposition. Kendall did not make the decision to suspend or fire Dixon; that decision was made by Rick Messinger, the regional manager. Although the employer could be liable under Title VII if Kendall (who had been charged with discrimination) deceived or wheedled Messinger into making a decision that would not have occurred but for the charge, see *Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990), there is no evidence of such a causal link.

The Supreme Court granted certiorari in *BCI Coca-Cola Bottling Co. v. EEOC*, 127 S. Ct. 852 (2007), to resolve a conflict about how the recommendations of intermediate supervisors such as Kendall should be handled under §2003e–3(a). The writ was dismissed following a settlement. 127 S. Ct. 1931 (2007). This circuit's position, reflected in *Shager*, is the one most favorable to plaintiffs, so there is no need to consider the position of other circuits. Dixon does not deny that she called Kendall a cow and that the office atmosphere had been poisoned for months (though she blames Kendall). Nor does Dixon say that the Department tolerates insolence from other subordinates. Messinger conducted an independent investigation and made his own decision. A reasonable jury could not find that Dixon's charge of discrimination caused the decision to end her employment. See *Brewer v. University of Illinois*, 479 F.3d 908, 918–20 (7th Cir. 2007). Dixon's brief insists that because "heifer" is not obscene she could not be punished. No rule of federal law requires employers to tolerate all outbursts that avoid obscenity, profanity, and battery; it may hold employees to higher standards of decorum. A public employer acts as employer, not as regulator, when dealing with speech in the workplace. See *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006).

Now let us return to the subjects on which the magistrate judge granted summary judgment. Dixon's charge of race discrimination failed, the judge wrote, because she had not identified any other similarly situated employee who was equally rude to a supervisor but kept her job. There are limits to how much similarity it is sensible to demand in cases of this type; even employers with thousands of workers rarely have any other *exactly* like the plaintiff. We have held that material similarity is the most that can be required. See *Crawford v. Indiana Harbor Belt R.R.*, 461 F.3d 844 (7th Cir. 2006). Even by the standard of *Crawford*, however, Dixon's proof falls short; she has not pointed to a non-black worker in a roughly equivalent situation who received better treatment.

This leaves only the claim of sex discrimination, manifested as a hostile working environment. Dixon filed a charge with the EEOC in March 2002. Illinois is a deferral state, so the period of limitations reaches back 300 days, to May 2001. Under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), hostile working conditions are a single discriminatory event, so everything that happened during a campaign of harassment may be considered if any part of it extended into the period of limitations.

Dixon contends that this requirement has been met by the charges that Kendall filed against her during 2001. She calls these harassment. This misunderstands, however, what a hostile-environment claim entails. See *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986). Formal disciplinary charges, requests for suspension, and the like are not *sexually* hostile; they do not make women feel worse than men who have been similarly charged or create differential working conditions. The only events that even arguably might imply a working environment that was less pleasant for plaintiff because of her sex occurred well before the 300 days preceding her administrative charge. Summary judgment therefore was proper on this claim.

AFFIRMED