# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-2832

ANGELA TYSON,

*Plaintiff-Appellant*,

*v.*

GANNETT CO., INC.,

*Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Southern District of Illinois, Indianapolis Division.
No. 1:05-cv-1848-RLY-TAB—**Richard L. Young**, *Judge.*

_____

ARGUED JULY 8, 2008—DECIDED AUGUST 19, 2008

_____

Before BAUER, COFFEY, and ROVNER, *Circuit Judges*.

COFFEY, *Circuit Judge.* Plaintiff Angela Tyson sued her employer Gannett Company, Inc., alleging that it had discriminated against her on the basis of her race—she is black—and disability and further retaliated against her for filing a disability charge of discrimination by refusing to let her return to work when she wanted to after she had suffered a back injury. During the course of the litigation, she abandoned all avenues of relief except for

her two race discrimination claims brought under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e-2. The district court granted summary judgment in favor of Gannett on both claims. The court found that Tyson failed to make out a prima facie case because she failed to present sufficient evidence to establish that a similarly situated white employee was treated more favorably. We affirm.

Tyson's employer, Gannett, owns the Indianapolis Star and News newspaper. The Star hired Tyson in 1998. She started as a mailer helper and was promoted to mailer assistant. In both jobs her duties included assembling the newspaper, stacking it, and loading it onto machines in preparation for distribution. Generally, mailer assistants need to be able to stand 90% of the time, walk 10% of the time, and lift, carry, push, and pull up to 35 pounds. The mailer assistants' specific tasks change from shift to shift, and some are more physically demanding than others.

Like all her fellow mailer assistants at the Star, Tyson is a member of the Teamsters Indiana Mailers Union Local 2001. The collective bargaining agreement between the Union and the Star requires that tasks be assigned to mailer assistants on the basis of "priority" (seniority). Thus, the most senior mailer assistant on a shift is allowed to choose the task she or he wishes to perform, and so on down the line until all of the work assignments for the shift have been allocated. The most senior mailer assistants can avoid doing the most strenuous work on every shift they work, but there is no guarantee that the less strenuous will be available for mailer assistants with less seniority who request it. When it is available, special "light duty"

work can be given to mailer assistants who are injured or who have medical restrictions because of health problems.

On October 3, 2002, Tyson slipped and fell at work and was injured. She then took sick leave for a period of time. After she returned to work with medical restrictions, she was assigned light work. In December of 2002, her doctor discovered she had injured her arm in the fall and imposed additional work restrictions. In February of 2003, Tyson had surgery to remove a cyst on her tail bone, which was unrelated to her fall. After that surgery, she claims to have had chronic back pain. Tyson took a short-term disability leave beginning in February of 2003.

In June of 2003, Tyson was released to return to work, but the Star had no openings for her that she could perform at that time with her restriction of not lifting more than 25 pounds. A medical report of October 2003, stated that she could work if she was provided with a counter brace for her right upper extremity and had a lifting restriction of 35 pounds. When she no longer needed the brace, Tyson returned to work as a mailer assistant in November with a 25-pound lifting restriction and was assigned to do light duty work. Then, in 2004, her back began to cause her discomfort. At that time, no light duty work assignments were available and she sought and obtained both short and long-term disability benefits. She remains on long-term disability to this day while still an employee of the Star.

Tyson's sole remaining claim is that Gannett discriminated against her on the basis of race by not permitting her to work from June 9, 2003, until November 23 of the same

year while she was under a medical restriction barring her from lifting more than 25 pounds. After discovery was completed, Gannett moved for summary judgment and the court granted the same. Our review is *de novo*, and we will affirm if, after viewing the evidence in the light most favorable to Tyson, there are no genuine issues of material fact and, thus, the defendant is entitled to judgment as a matter of law. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007).

Tyson sued Gannett under both 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. Gannett argues that Tyson cannot bring a Title VII claim because, it says, she did not file a charge of race discrimination with the Equal Employment Opportunity Commission (EEOC) and, thus, has failed to exhaust her administrative remedies. A plaintiff can sue under Title VII only if she first has filed a charge of discrimination with the EEOC. *See Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). Tyson alleged in her complaint—and Gannett admitted in its answer—that she "filed a claim of disability discrimination" against Gannett in October 2003, but there is no evidence that she filed charge of discrimination on the basis of race. Tyson has failed to present any evidence disclosing whether she has filed a Title VII race discrimination claim, thus Gannett is entitled to summary judgment on Tyson's Title VII claim because she failed to comply with the EEOC requirement. Her Section 1981 claim survives, however, because the filing of a discrimination charge is not a prerequisite to pursuing that claim in court. *See Fane v. Locke Reynolds, L.L.P.*, 480 F.3d 534, 539 (7th Cir. 2007). Thus, we are left

with the question of whether there is any evidence to support her claim of race discrimination.

Tyson has chosen to prove her case using the indirect method set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). The parties do not dispute that Tyson meets the first three prongs of the four-part *McDonnell Douglas* test—(1) she is a member of a protected class, (2) she was meeting Gannett's legitimate job requirements, and (3) she suffered an adverse employment action. *See Fane*, 480 F.3d at 538; *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007) (noting the *McDonnell Douglas* test applies to discrimination claims brought under Section 1981), *aff'd*, 128 S. Ct. 1951 (2008). They disagree, however, about whether Tyson can establish the fourth prong by proving that a Caucasian employee, Janet Harvey, was similarly situated and that she was treated more favorably. *See Jones v. Union Pacific Railroad Company*, 302 F.3d 735, 741 (7th Cir. 2002). Tyson asserts that Harvey was allowed to work as a mailer assistant when she had a 25 pound lifting restriction. To be similarly situated, Harvey and Tyson must be alike "in all material respects," so as to suggest that Tyson "was singled out for worse treatment." *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007) (quoting *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006)).

The record demonstrates that Tyson and Harvey were not similarly situated because they had different seniority status, the determining factor in job assignment under the Union's collective bargaining agreement. Harvey began working for the Star approximately three years

before Tyson. Iris Hayden, Senior Human Resources Business Consultant for Gannett, testified in her affidavit that Harvey was in the top half of mailer assistants in terms of seniority, while Tyson was in the bottom half. Under the seniority system, the most senior mailer assistant gets to select which job functions he or she will perform on a given shift. Some mailer assistants such as Harvey have sufficient seniority to guarantee that they can avoid having to perform duties that require lifting more than 25 pounds. According to Hayden, Harvey had enough seniority to ensure that she would only have to work on tasks within her restrictions. Tyson attempted to refute this evidence in her affidavit, which states that, before her fall, she had sufficient seniority to select less strenuous tasks. But, just because she has been able to avoid certain tasks in the past, it does not mean that she will always be able to accomplish this, because the nature of her work assignments frequently changes from shift to shift, and thus her ability to choose is based upon the seniority of the other mailer assistants assigned to the same shift, and furthermore more than half of all mailer assistants are more senior than Tyson.

In this court's recent opinion in *Filar v. Board of Education of the City of Chicago,* 526 F.3d 1054, 1061-62 (7th Cir. 2008), Judge Flaum, writing for the panel, said that: "In some circumstances, differences in seniority will preclude a showing that two employees are 'similarly situated'. . . . To the extent that seniority is a simple proxy for something like the length of employment and is something that an employer must credit when making employment decisions, differences in seniority will tend to make two

employees dissimilar for purposes of the plaintiff's prima facie case." Under this reasoning, Tyson and Harvey are not similarly situated and, therefore, summary judgment was appropriate because Tyson failed to prove her prima facie case of race discrimination.

AFFIRMED.