**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
Chicago, Illinois 60604

Argued May 22, 2015
Decided September 1, 2015

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-2842

| | |
|---|---|
| BEUGRE S. NEHAN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 11 CV 646 |
| TOOTSIE ROLL INDUSTRIES, INC., | |
| *Defendant-Appellee*. | John J. Tharp, Jr., *Judge*. |

**O R D E R**

After his termination, Beugre Nehan, a native of the Republic of Côte d'Ivoire, sued his former employer, Tootsie Roll Industries, Inc. ("Tootsie Roll") alleging race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, and disability discrimination in violation of the Americans with Disabilities Act ("ADA"). He also claimed Tootsie Roll retaliated against him for having engaged in protected conduct in violation of 42 U.S.C. § 1981. The district court entered summary

judgment in favor of Tootsie Roll on all claims because Nehan did not provide sufficient evidence to support any of those claims. Nehan disagrees and now appeals the district court's grant of summary judgment on his claims of race and national origin discrimination, and retaliation. However, we affirm.

## BACKGROUND

Nehan, who is a native of the Republic of Côte d'Ivoire, was employed by Tootsie Roll in its Chicago, Illinois plant from June 18, 2002 to August 18, 2010. Nehan was initially hired as a general laborer. At the time of his discharge, he was working as a forklift driver in the shipping and receiving department. Nehan suffered multiple back injuries while at Tootsie Roll, resulting in medical work restrictions.

During Nehan's employment, Tootsie Roll maintained Plant Work Rules that set forth the disciplinary steps for certain infractions. For example, insubordination resulted in suspension in the first instance and discharge in the second. Tootsie Roll reserved the right to accelerate or decelerate disciplinary steps based upon the nature of the conduct. Tootsie Roll also required employees to work mandatory overtime, and employees were informed that repeated refusals to work mandatory overtime would result in disciplinary action.

Nehan received numerous disciplinary actions for attendance, tardiness, and other issues beginning in August 2002. We review some, but not all of these infractions. In June 2008, Nehan was suspended for two days for tardiness. In August 2008, he was issued a one-day in-house suspension for tardiness and an additional verbal warning for tardiness. In April 2009, he received a five-day suspension for tardiness. In July 2009, he received a written warning for absenteeism.

Following these events, on July 30, 2009, Nehan filed a charge of discrimination based on race, national origin, and disability with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). Nehan complained that his supervisor, Willie McCaa, who is African-American, ordered Nehan to perform jobs that were not within his medical restrictions.

After filing this charge, Nehan continued to receive disciplinary actions. In October 2009, he was given a written warning for absenteeism. In December 2009, Nehan was given a warning for failure to wear a seatbelt and safety glasses. In February 2010, Nehan was suspended for two days for refusing to perform his cleaning assignment and leaving his workspace. In March 2010, Nehan was issued a warning for insubordination because he refused to work mandatory overtime. In April 2010, he received another warning for a safety violation. In May 2010, Nehan was issued a five-day suspension for insubordination and a two-day in-house suspension for

tardiness.

In June 2010, Nehan filed a second charge of discrimination with the IDHR and EEOC, this time complaining that plant managers had taken Nehan's forklift away from him and assigned it to someone else. The EEOC granted Nehan the right to sue.

In August 2010, Tootsie Roll terminated Nehan after he again refused to perform mandatory overtime. In March 2012, Nehan sued Tootsie Roll in federal court, alleging race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and disability discrimination in violation of the ADA. He also claimed Tootsie Roll retaliated against him for having engaged in protected conduct in violation of 42 U.S.C. § 1981 ("Section 1981"). The district court entered summary judgment in favor of Tootsie Roll on all claims, finding there was no evidence that Nehan's race, national origin, alleged disability, or two charges of discrimination (or any other protected activity) had anything to do with his discipline and ultimate discharge. The district court noted that Nehan was subject to over twenty disciplinary actions prior to being terminated, which showed that he was not meeting Tootsie Roll's legitimate expectations concerning employee conduct.

Nehan now appeals the district court's grant of summary judgment on his claims of race and national origin discrimination, and retaliation. He does not seek review of the summary judgment grant on his disability discrimination claim.

## ANALYSIS

We review the district court's grant of summary judgment de novo, viewing the record in the light most favorable to Nehan and drawing all reasonable inferences in his favor. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Nehan alleges that Tootsie Roll disciplined and terminated him because of his national origin (Republic of Côte d'Ivoire) and his race (African-American), in violation of Title VII and Section 1981. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits racial discrimination and retaliation against employees when a contractual relationship exists between the employer and employee. *See* 42 U.S.C. § 1981(b); *Davis v. Time Warner Cable of Se. Wisc., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011). A plaintiff may use either the direct or indirect method of proof to avoid summary judgment on a race or national origin

discrimination claim under Title VII or Section 1981. *See Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014); *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012); *Davis*, 651 F.3d at 671–72 (noting that the "methods of proof and elements of the case are essentially identical" in Title VII and Section 1981 cases).

Under the direct method of proof, a plaintiff must introduce evidence that "points directly" to a discriminatory reason for adverse employment action to survive summary judgment. *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 809 (7th Cir. 2011) (citing *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008)). A plaintiff can make this showing through "an acknowledgement of discriminatory intent by the defendant," *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004), or by circumstantial evidence that "suggests discrimination through a longer chain of inferences," *Atanus*, 520 F.3d at 671. Examples of circumstantial evidence that might suggest intentional discrimination are suspicious timing, ambiguous statements, comments directed at employees in the protected group, and examples of similarly situated employees outside the protected class who received better treatment. *See id.* at 672.

Nehan has presented no evidence whatsoever of discrimination based on race or national origin sufficient to make the required showing under the direct method. The evidence Nehan cites consists of medical records, statements in his post-deposition affidavit,[1] work status reports, and correspondence regarding his medical treatment and physical status. No portion of this evidence relates to Nehan's race or national origin. If anything, it alludes to some possible discrimination on the basis of a disability, but this appeal does not involve any claims under the ADA. In the context of a discrimination claim tried under the direct method, "the assembled evidence must point 'directly to a discriminatory reason for the employer's action' for [a plaintiff's] claim to survive summary judgment." *Davis*, 651 F.3d at 672 (quoting *Adams v. Wal–Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). Nehan's evidence does not come close to meeting this burden.

---

[1] Nehan claims the district court was wrong to disregard portions of his post-deposition affidavit in which he stated that his refusal to work mandatory overtime was justified by his alleged belief that he would not be able to use a forklift after June 4, 2010. However, Nehan made clear in his deposition that he *was* permitted to use a forklift after that date. The district court thus properly disregarded portions of Nehan's post-deposition affidavit that conflicted with his prior deposition testimony. *See United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 466 (7th Cir. 2005) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions.") (*quoting Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168–69 (7th Cir. 1996)); *see also Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995) (noting this court "ha[s] been highly critical of efforts to patch up a party's deposition with his own subsequent affidavit").

Under the indirect method, a plaintiff must establish a prima facie case of discrimination showing that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was meeting his employer's legitimate expectations at the time of the adverse action, and (4) the employer treated similarly situated employees not in the protected class more favorably. *Moultrie v. Penn Aluminum Int'l, LLC,* 766 F.3d 747, 752–53 (7th Cir. 2014). If these elements are established, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the employment action. *Id.* at 753. If it does, the burden shifts back to the employee to show that the proffered reason is pretext. *Id.* If a plaintiff cannot establish a prima facie case, an employer is not subjected to the pretext inquiry. *See Peele v. Country Mut. Ins. Co.,* 288 F.3d 319, 327 (7th Cir. 2002).

Nehan can establish the first and second elements, as he is a member of protected classes and was terminated from his position at Tootsie Roll. But as to the third element, the record clearly shows Nehan was not meeting Tootsie Roll's legitimate expectations. Nehan was the subject of more than twenty disciplinary actions for tardiness, inattention, and insubordination while at Tootsie Roll, many of which occurred in the year he was discharged. Nehan's performance issues continued after he filed his charges of discrimination, and those charges did not preclude him from being subsequently disciplined and ultimately terminated. *See, e.g.*, *Williams v. Airborne Express, Inc.*, 521 F.3d 765, 768 (7th Cir. 2008) (plaintiff could not show he was meeting employer's legitimate job expectations where employer had already "disciplined him three times (twice in the previous year) and still he was insubordinate again"). Nehan also fails to establish the fourth element, that similarly situated employees outside of his protected class were treated differently. Because Nehan failed to establish the third and fourth elements of his prima facie case, summary judgment in favor of Tootsie Roll was properly entered.

We now turn to Nehan's retaliation claim. Title VII bars discrimination against an employee because the employee "oppose[s] any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). As with discrimination claims, a plaintiff alleging retaliation can proceed under a direct or indirect method. *Moultrie,* 766 F.3d at 754. Under the direct method, a plaintiff must show "(1) that he engaged in activity protected by the statute; (2) that his employer took an adverse employment action against him; and (3) that there is a causal connection between [his] protected activity and the adverse employment action." *Id.* The indirect method involves burden shifting that "mirrors that for discrimination." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 983 (7th Cir. 2014) (quoting *Davis v. ConWay Transp. Cent. Express, Inc.*, 368 F.3d 776, 788 (7th Cir. 2004)).

Again, Nehan's case fails under the indirect method because he cannot establish that he met Tootsie Roll's legitimate expectations. So, we consider Nehan's evidence solely under the direct method. There is no dispute that Nehan engaged in statutorily protected activity when he filed charges with the IDHR and EEOC and that his discipline and termination were adverse employment actions. The question is whether there is a causal link between the two.

Nehan contends the timing of his termination in August 2010, in relation to his charges of discrimination (filed on July 30, 2009, and June 23, 2010) suggests retaliation. We disagree. The timing here does not suggest that Tootsie Roll terminated Nehan because he filed a charge of discrimination against the company; after all, Tootsie Roll did not terminate Nehan for more than a year after his 2009 charge. *See, e.g.*, *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) (finding that "extended time gaps alone militate against allowing an inference of causation based on suspicious timing"); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) (finding two-month gap between plaintiff's complaint and termination was "not strongly suggestive of retaliation"); *McGuire v. City of Springfield, Ill.*, 280 F.3d 794, 796 (7th Cir. 2002) (noting that a long gap in time "undercuts an inference of causation"). In any event, timing alone rarely creates a fact issue, s*ee, e.g.*, *Donahoe*, 667 F.3d at 860, especially where, as here, a plaintiff had such a negative record of performance at work. Thus, we conclude the district court's grant of summary judgment on Nehan's retaliation claim was appropriate.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.