**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHANNON CROSS, | No. 24-6068 |
| Plaintiff - Appellant, | D.C. No. 4:21-cv-01312-JST |
| v. | |
| CENTRAL CONTRA COSTA TRANSIT AUTHORITY, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Submitted January 9, 2026[**]
San Francisco, California

Before: NGUYEN and BENNETT, Circuit Judges, and MATSUMOTO, District Judge.[***]

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]   The Honorable Kiyo A. Matsumoto, United States District Judge for the Eastern District of New York, sitting by designation.

Plaintiff-Appellant Shannon Cross ("Cross") appeals the district court's grant of summary judgment in favor of her former employer, Defendant-Appellee Central Contra Costa Transit Authority ("CCCTA"). Less than a year after her employment as a bus operator, Cross collided with a bicyclist while operating a CCCTA bus. After an investigation revealed that Cross was completely at fault for the collision, and had also repeatedly violated multiple CCCTA policies and California Vehicle Code violations, CCCTA terminated Cross. Cross sued, alleging claims for religious discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act and California's Fair Employment and Housing Act ("FEHA"). We have jurisdiction under 28 U.S.C. § 1291, and review *de novo*. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1047 (9th Cir. 1995). We affirm.

1. The district court did not err in granting summary judgment to CCCTA on Cross's religious discrimination claims under Title VII and FEHA. "To establish a prima facie case, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination." *Cordova v. State Farms Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (citation modified). A prima facie case may be established either by "direct evidence of discriminatory intent" or through the *McDonnell Douglas* framework. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Guz v.*

*Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes.").

"Direct evidence of discriminatory intent consists of evidence which, if believed, proves the fact of discriminatory animus *without inference or presumption.*" *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017) (quoting *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 662 (9th Cir. 2002)) (emphasis added).

As direct evidence, Cross points to the statements of Supervisors Morris and Carroll that she cannot wear her hijab. But CCCTA explained that the supervisors were "merely attempting to enforce the dress code," and under CCCTA's handbook for transit operators, supervisors were expressly empowered to issue verbal warnings for perceived rule infractions of CCCTA's policy, such as wearing unauthorized headwear. "[W]here there are obvious alternative explanations for the purportedly . . . invidious discrimination plaintiff asks us to infer, discrimination is not a plausible conclusion." *Hittle v. City of Stockton, California*, 101 F.4th 1000, 1014 (9th Cir. 2024) (citation modified). Because these statements do not necessarily lead to the conclusion that the supervisors harbored an animus against the Muslim religion rather than an attempt to enforce the dress code, Cross fails to establish discriminatory intent through direct evidence.

24-6068

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff may establish a prima facie case of discrimination by showing: (1) they belong to a protected class; (2) they were qualified to do the job; (3) they were subject to an adverse employment action; and (4) the employer treated similarly situated employees outside of the plaintiff's class more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). If the plaintiff establishes a prima facie case, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the employer satisfies that burden, then the burden shifts back to the plaintiff to show that the "proffered reason was a pretext for discrimination." *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001).

As evidence of a similarly situated employee who was treated more favorably, Cross points to Brown, a non-Muslim bus operator at CCCTA who also had an occurrence with a bicyclist. But there were "significant differences between" Cross and Brown. First, the Police Department found that Brown was "not at fault" for her accident, whereas Cross was found "100% at fault by the Police Department." Second, Brown's occurrence was deemed "non-preventable," whereas Cross's occurrence was deemed "preventable." Finally, Brown had been

a "25+ year veteran," whereas Cross had been driving with CCCTA for less than a year. *See Tyson v. Gannett Co.*, 538 F.3d 781, 784 (7th Cir. 2008) (citation omitted) ("[D]ifferences in seniority will tend to make two employees dissimilar for purposes of the plaintiff's prima facie case."). Thus, because of these differences, Brown is not similarly situated "in all material respects," *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006), and Cross failed to establish a prima facie case of discrimination under *McDonnell Douglas*.

2. The district court did not err in granting summary judgment to CCCTA on Cross's retaliation claims under Title VII and FEHA. Cross argues that a reasonable jury could find that she was unlawfully terminated in retaliation "because of" her request to wear a hijab or her complaints of harassment. To determine retaliation claims brought under Title VII and FEHA, courts apply the *McDonnell Douglas* burden-shifting framework. *See Porter v. Cal. Dep't of Corrs.*, 419 F.3d 885, 894 (9th Cir. 2004); *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108–09 (2007). An employee may establish a prima facie case of retaliation by showing: (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory

reason for its decision." *Id.* If the employer satisfies that burden, then the burden shifts back to the plaintiff to show that the "proffered reason was a pretext for unlawful discrimination." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007).

At issue is the district court's analysis in the third step. Cross has not shown that CCCTA's termination was pretextual. CCCTA terminated Cross because Cross violated California Vehicle Code § 21760(b) when she hit a bicyclist. Cross "acknowledged that she was 'at complete fault'" for the accident. As part of the investigation on Cross's termination, a human resources director observed that Cross had "violated several other serious rules and traffic laws, including running stop signs and red lights, using her cell phone while in revenue service, and failing to stop at BART crosswalks." The director concluded that Cross "repeatedly drives unsafely." Finally, contrary to Cross's argument, CCCTA did not violate its own policy and procedure, which allowed CCCTA to initiate "termination" for reasons including "poor job performance" and "violation of law." Because Cross did not demonstrate that CCCTA's reasons for her termination were pretextual, she fails to meet her burden on her retaliation claims, and CCCTA is entitled to summary judgment.

3. The district court did not err in granting summary judgment to CCCTA on Cross's harassment claims alleging hostile work environment under Title VII

and FEHA.  To allege a prima facie hostile work environment based on religion, Cross needed to plead: "(1) that [s]he was subjected to verbal or physical conduct of a harassing nature [based on her religion]; (2) that this conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000); *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006).  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  But "that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Cross testified that there was never religious insult directed towards her, and based her harassment claim on three statements: Supervisor Morris telling Cross "you can't wear that" hijab; Supervisor Carroll telling Cross she could not wear "that thing" on her head; and an unidentified bus operator remarking to Cross "now I'm going to wear my hat for religious purposes" after Morris announced that the uniform policy for unauthorized headwear would be enforced.  But three allegedly offensive comments over the course of nearly a year are not sufficiently severe or pervasive to constitute a hostile work environment.  *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 643–44 (9th Cir. 2003) (holding that "[t]wo isolated

offensive remarks" combined with "other complaints about unfair treatment" were "not severe or pervasive enough to create a hostile work environment"). Because these "offhand comments[] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment,'" *Faragher*, 524 U.S. at 788, the district court did not err in granting summary judgment for CCCTA's motion on her harassment claim.[1]

**AFFIRMED.**

---

[1] Cross urges the Ninth Circuit to recognize the theory of *quid pro quo* harassment in the context of religious discrimination, which essentially occurs when "a supervisor demands that an employee alter or renounce some religious belief in exchange for job benefits." *Weiss v. United States*, 595 F. Supp. 1050, 1056 (E.D. Va. 1984) (citing *Katz v. Dole,* 709 F.2d 251 (4th Cir. 1983)). But even assuming such a theory applies here, Cross does not present sufficient evidence to support it.