**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MONTANA SHOOTING SPORTS ASSOCIATION; SECOND AMENDMENT FOUNDATION, INC.; GARY MARBUT, *Plaintiffs-Appellants*, <br><br> and <br><br> STATE OF MONTANA, *Intervenor*, <br><br> v. <br><br> ERIC H. HOLDER, JR., Attorney General, *Defendant-Appellee*. | No. 10-36094 <br><br> D.C. No. 9:09-cv-00147-DWM <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
March 4, 2013—Portland, Oregon

Filed August 23, 2013

Before: A. Wallace Tashima, Richard R. Clifton,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Clifton;
Partial Concurrence and Partial Dissent by Judge Bea

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's dismissal, for failure to state a claim, of an action brought by Gary Marbut, the Montana Shooting Sports Association, and the Second Amendment Foundation challenging federal firearms regulations.

Plaintiff Marbut sought to manufacture firearms under the Montana Firearms Freedom Act (MFFA), state legislation that declared that the manufacture and sale of certain firearms within the state was beyond the scope of Congress's commerce power. The panel first held that Marbut had standing on account of economic injury. The panel then held that the complaint failed to state a claim in light of *Gonzales v. Raich*, 545 U.S. 1 (2005), and *United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006), and that Congress could rationally conclude that unlicensed firearms made in Montana would make their way into the interstate market. The panel held that the MFFA was necessarily preempted and invalid.

Concurring in part and dissenting in part, Jude Bea agreed with the majority's conclusion that Marbut was subject to federal licensing laws. He stated that it was unnecessary for

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the majority to hold that the MFFA was preempted by federal law.

**COUNSEL**

Quentin M. Rhoades (argued), Sullivan, Tabaracci & Rhoades, P.C., Missoula, Montana, for Plaintiffs-Appellants.

Mark R. Freeman (argued), Mark B. Stern, and Abby C. Wright, Appellate Staff, Tony West, Assistant Attorney General, Michael W. Cotter, United States Attorney, United States Department of Justice, Civil Division, Washington, D.C. for Defendant-Appellee.

Nicholas C. Dranias (argued), Goldwater Institute, Phoenix, Arizona; Timothy C. Fox, Gough, Shanahan, Johnson & Waterman, Helena, Montana; and Ilya Shapiro, Cato Institute, Washington, D.C., for Amici Curiae The Goldwater Institute and Cato Institute.

Steve Bullock, Montana Attorney General; Zach Zipfel, Assistant Attorney General, Helena, Montana, for Amicus Curiae State of Montana.

Joseph W. Miller, Law Offices of Joseph Miller, LLC, Fairbanks, Alaska; Gary G. Kreep, United States Justice Foundation, Ramona, California; Herbert W. Titus, William J. Olson, John S. Miles, and Jeremiah L. Morgan, William J. Olson, P.C., Vienna, Virginia, for Amici Curiae Gun Owners of America, Inc., Gun Owners Foundation, and Virginia Citizens Defense League.

John E. Bloomquist, Doney Crowley Bloomquist Payne Uda P.C., Helena, Montana, for Amicus Curiae Weapons Collectors Society of Montana.

Timothy Baldwin, Kalispell, Montana, for Amici Curiae Thirty Montana Legislators.

Jonathan E. Lowy and Daniel Vice, Brady Center to Prevent Gun Violence, Washington, D.C.; Gil N. Peles and Noemi A. Blasutta, Proskauer Rose LLP, Los Angeles, California, for Amici Curiae Brady Center to Prevent Gun Violence, International Brotherhood of Police Officers, Hispanic American Police Command Officers Association, National Black Police Association, National Network to End Domestic Violence, Montana Human Rights Network, and Legal Community Against Violence.

Mark L. Shurtleff, Attorney General, Salt Lake City, Utah; John J. Burns, Attorney General, Juneau, Alaska; Lawrence G. Wasden, Attorney General, Boise, Idaho; Bill Schuette, Attorney General, Lansing, Michigan; Jon Bruning, Attorney General, Lincoln, Nebraska; Alan Wilson, Attorney General, Columbia, South Carolina; Marty J. Jackley, Attorney General, Pierre, South Dakota; Darrell V. McGraw, Jr., Attorney General, Charleston, West Virginia; Gregory A. Phillips, Attorney General, Cheyenne, Wyoming, for Amici Curiae States of Utah, Alaska, Idaho, Michigan, Nebraska, South Carolina, South Dakota, West Virginia, and Wyoming.

Sharon L. Browne and Adam R. Pomeroy, Pacific Legal Foundation, Sacramento, California, for Amicus Curiae Pacific Legal Foundation.

Anthony T. Caso, John C. Eastman, Karen J. Lugo, and David Llewellyn, Center for Constitutional Jurisprudence, Orange, California, for Amici Curiae Center for Constitutional Jurisprudence and Fifteen State Legislators.

## OPINION

CLIFTON, Circuit Judge:

Plaintiffs Gary Marbut, the Montana Shooting Sports Association, and the Second Amendment Foundation appeal the dismissal of their action challenging federal firearms regulations. Marbut wants to manufacture firearms under the Montana Firearms Freedom Act, state legislation that declares that the manufacture and sale of certain firearms within the state is beyond the scope of Congress's commerce power. The district court dismissed the action because no plaintiff had standing to bring the claim and, in the alternative, because the complaint failed to state a claim in light of *Gonzales v. Raich*, 545 U.S. 1 (2005), and *United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006). On appeal, we conclude that Marbut has standing to sue, but we agree with the district court that Marbut has failed to state a claim. Thus, we affirm the judgment.

## I. Background

The Montana Legislature passed the Montana Firearms Freedom Act ("MFFA" or "the Act"), which declares that a firearm or ammunition "manufactured . . . in Montana and that remains within the borders of Montana is not subject to federal law or federal regulation, including registration, under the authority of congress [sic] to regulate interstate

commerce." Mont. Code Ann. § 30-20-104. It purports to authorize the manufacture and sale of firearms within the state, but imposes certain requirements for a firearm to qualify under the Act, notably that the words "Made in Montana" be "clearly stamped on a central metallic part." *Id.* § 30-20-106.

Plaintiff Gary Marbut owns a business that manufactures shooting range equipment for law enforcement agencies and is involved in a variety of gun-related organizations and activities, including service as the president of the Montana Shooting Sports Association, another plaintiff. Marbut wishes to manufacture and sell firearms and ammunition to Montanans under the MFFA without complying with applicable federal laws regulating firearms.

In particular, Marbut wishes to manufacture and sell a .22 caliber rifle called the "Montana Buckaroo." Marbut has design plans for the rifle that are ready to load into machining equipment for production, and he has identified manufacturers that will supply the individual component parts. Several hundred Montanans have offered to purchase the Montana Buckaroo at Marbut's asking price, but such sales are conditioned on Marbut winning this suit and not having to comply with federal licensing requirements. According to the complaint, these customers "do not want . . . and will not buy" the Montana Buckaroo if manufactured by a federal firearms licensee. Marbut has also developed ammunition that he wants to sell under the MFFA and that a state agency has expressed interest in purchasing.

After the passage of the MFFA, the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") distributed an "Open Letter to All Montana Federal Firearm

Licensees." The letter stated that the MFFA conflicts with federal firearms laws, and that federal law supersedes the Act and continues to apply. Marbut subsequently sent a letter to the ATF, asking whether he could manufacture firearms and ammunition under the MFFA without complying with federal statutes and without fear of criminal prosecution. In response, an ATF special agent wrote to Marbut that "unlicensed manufacturing of firearms of ammunition for sale . . . is a violation of Federal law and could lead to . . . potential criminal prosecution."

Marbut, along with the Montana Shooting Sports Association and the Second Amendment Foundation, filed for declaratory and injunctive relief. The Montana Shooting Sports Association and the Second Amendment Foundation are non-profits dedicated to gun education and advocacy. Plaintiffs requested a declaratory judgment that Congress has no power to regulate the activities contemplated by the MFFA and injunctive relief preventing the federal government from bringing civil or criminal actions under federal firearms law against Montana citizens acting in compliance with the MFFA.

A federal magistrate judge recommended dismissing the suit because plaintiffs lacked standing and, in the alternative, because plaintiffs failed to state a claim in light of the Commerce Clause jurisprudence of the Supreme Court and this court. The federal district court adopted these recommendations in full and dismissed the case. Plaintiffs timely appealed.

## II. Standing

Plaintiffs argue that economic injury and the threat of criminal prosecution each provide a basis for standing. The district court held that none of the plaintiffs had standing. We review a motion to dismiss for lack of standing de novo, construing the factual allegations in the complaint in favor of the plaintiffs. *Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000). On appeal, we conclude that Marbut has standing on account of economic injury and do not reach his alternative argument for standing. Neither do we reach the issue of whether the Montana Shooting Sports Association and the Second Amendment Foundation have organizational standing.

To have standing, a plaintiff must suffer an injury that is "actual or imminent" as opposed to "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). Because Marbut asks for injunctive relief, he must show "a very significant possibility of future harm." *Mortensen v. Cnty. of Sacramento*, 368 F.3d 1082, 1086 (9th Cir. 2004) (quoting *Bras v. Cal. Pub. Utils. Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995)).

Economic injury caused by a proscriptive statute is sufficient for standing to challenge that statute. *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 855–56, *opinion amended in other respects on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002). In *Davis*, for example, plaintiff animal trappers challenged a law prohibiting the use of certain types of traps. 307 F.3d at 842. The trappers alleged that they earned a living through trapping, had ceased trapping because of the law, would continue trapping if the law were declared

invalid, and asked for declaratory and injunctive relief. *Id.* at 845, 855–56. The court concluded that the trappers had standing to challenge the law, noting that "the trappers' economic injury is directly traceable to the fact that [the challenged law] explicitly forbids the trapping they would otherwise do." *Id.* at 856.

Like the plaintiffs in *Davis*, Marbut alleges an economic injury resulting from laws explicitly prohibiting a business activity that he would otherwise engage in. The magistrate judge distinguished *Davis* on the basis that the trappers, unlike Marbut, had a preexisting business that came to a halt after the law at issue was enacted. It is true that the court in *Davis*, in determining whether or not the trappers would suffer future economic injury on account of the challenged law, noted that the "uncontested history of using the now-prohibited traps before the passage of [the challenged law], and their statements that they would continue trapping if not constrained by [that law], are enough to show they would resume trapping if [the] ban were declared invalid." *Id.* at 856. But having operated a business enterprise in the past based on a now-prohibited activity is not a necessary condition for standing.

Injunctive relief requires a showing of a significant likelihood of future injury. *See Mortensen*, 368 F.3d at 1086. Having engaged in a business activity in the past may make it less speculative that a plaintiff can and would do so again if the law were enjoined, but there is no bright line rule requiring past operation to establish standing. Rather, "determining 'injury' for Article III standing purposes is a fact-specific inquiry." *Lujan*, 504 U.S. at 606.

Construing Marbut's allegations in the light most favorable to him, we conclude that he would manufacture and sell unlicensed firearms should we declare federal regulations inapplicable to the Buckaroo. Marbut has not merely alleged a vague desire to manufacture and sell unlicensed firearms if he wins this lawsuit, but has made specific allegations substantiating this claim. He has a background in running his own shooting range equipment manufacturing business, has identified suppliers for the component parts of the Buckaroo, has design plans for the firearm ready to load into manufacturing equipment, and has identified hundreds of customers who have ordered the Buckaroo at his asking price. Marbut has alleged much more than the "'some day' intentions . . . without any description of concrete plans" held insufficient for standing. *Lujan*, 504 U.S. at 564 (holding that a mere professed intent to visit a country was insufficient for standing, when plaintiffs had not purchased a plane ticket or even described when they would visit).

We are not persuaded by the government's argument that Marbut lacks standing because he could conduct his business through legal means by obtaining a federal license. The government provides no reason why we should not take Marbut's allegation that his customers "do not want, have not ordered, and will not buy the 'Montana Buckaroo' if it is manufactured by federal firearms licensees" as true, as we generally must in considering a dismissal under Federal Rule of Civil Procedure 12(b). Marbut has supported his allegation with evidence suggesting that much of the appeal of the Montana Buckaroo is that it is a Montana product purportedly not subject to federal gun laws, if for no other reason than the state pride and limited government symbolism associated with such a product. One customer, for example, ordered ten Buckaroos for teaching purposes and added to his order, "I

can't think of a better way to teach Montana's shooting heritage than with a historic MFFA rifle." Another customer, ordering two Buckaroos, exclaimed, "I believe they would be a collector's item one day!"

Moreover, even if Marbut could conduct his business as a federal licensee without losing customers, he would nonetheless incur economic costs in complying with the licensing requirements. Marbut alleged that he is not willing "to pay the requisite . . . licensing fees and taxes" associated with complying with federal licensing requirements. The economic costs of complying with a licensing scheme can be sufficient for standing. *Ariz. Contractors Ass'n, Inc. v. Napolitano*, 526 F. Supp. 2d 968, 979 (D. Ariz. 2007) (holding that plaintiffs had demonstrated they would sustain economic injury if the law forced them to use E-Verify), *aff'd sub nom. Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856 (9th Cir. 2009), *aff'd sub nom. Chamber of Commerce v. Whiting*, 131 S. Ct. 1968, 179 (2011).

Under the circumstances of this case and construing Marbut's allegations in the light most favorable to him, we conclude that Marbut has alleged economic injury sufficient for standing. Because Marbut has standing, and "the presence in a suit of even one party with standing suffices to make a claim justiciable," *Brown v. City of L.A.*, 521 F.3d 1238, 1240 n.1 (9th Cir. 2008), we need not address whether the Second Amendment Foundation and the Montana Shooting Sports Association satisfy the requirements for organizational standing. *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) (declining to address standing of additional plaintiffs "because the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement").

## III.    Merits

The district court dismissed the complaint for failure to state a claim, concluding that Congress's commerce power permitted it to regulate the manufacture and sale of the Buckaroo. We review a dismissal for failure to state a claim de novo. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Marbut argues that the manufacture and sale of the Buckaroo are outside the scope of the Commerce Clause, and that federal licensing laws do not apply as a result. His primary argument is that an expansive interpretation of the Commerce Clause is inconsistent with dual sovereignty, and he laments the trajectory of the Supreme Court's Commerce Clause jurisprudence. Marbut argues, for example, that "the Supreme Court's Commerce Clause jurisprudence has improvidently altered the very form of American government, reading out dual sovereignty, and stripping from the States all independence of policy or action."

Whether or not Marbut is correct in his critique of that jurisprudence, we are not free to disregard it. To his credit, Marbut acknowledges as much, recognizing that this court's "hands are tied" with respect to binding precedent. Specifically, his opening brief states:

> Appellants realize that in many respects, as regards the arguments so far made, the Court's hands are tied. Appellants advocate for the case law being overturned, and an intermediate scrutiny test being applied. But the relevant case law has been promulgated by the Supreme Court, whose decision are

controlling. *See e.g.*, *United States v. Stewart*, 451 F.3d 1071, 1076 (9th Cir. 2006). Thus, even if the Court agrees with the reasoning, there are few remedies the Court is able to offer. One, however, would be to limit *Raich* to its facts, and distinguish it on grounds of its national defense implications.

Turning to the precedent from the Supreme Court and our own court that we are bound to follow, we conclude that Congress's commerce power extends to the manufacture and sale of the Buckaroo, and that *Raich* cannot be read as limited to its facts, as Marbut urges.

In *Gonzales v. Raich*, the Court held that Congress may regulate a commodity under the Commerce Clause, in that case marijuana, if there exists a rational basis for concluding that the activities at issue, taken in the aggregate, substantially affect interstate commerce. 545 U.S. 1, 22 (2005). Congress may regulate even purely intrastate activity "if it concludes that the failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Id.* at 18. We applied this test to the possession of firearms in *United States v. Stewart*, holding that Congress could prohibit the possession of a homemade machine gun because it could have rationally concluded that the possession of homemade machine guns would substantially affect the interstate market in machine guns. 451 F.3d 1071, 1077 (9th Cir. 2006); *see United States v. Henry*, 688 F.3d 637, 638 (9th Cir. 2012).

Under *Raich* and *Stewart*, the regulation of the Montana Buckaroo is within Congress's commerce power. Marbut intends to manufacture the Buckaroo under the Montana

Firearms Freedom Act, which means that he will manufacture and sell it within the borders of Montana. *See* Mont. Code Ann. § 30-20-104. But even if Marbut never sells the Buckaroo outside of Montana, Congress could rationally conclude that unlicensed firearms would make their way into the interstate market. This result does not change because the Buckaroo will bear a "Made in Montana" stamp to distinguish it from firearms that may be sold in the interstate market. *See id.* § 30-20-106. Congress might reasonably determine that a "Made in Montana" stamp will not deter those seeking to purchase unregistered firearms in the interstate black market. *See Stewart*, 451 F.3d at 1077–78 (rejecting the argument that homemade machine guns were "unique" and so would not affect the market for commercial machine guns, noting that "those seeking [machine guns] care only whether the guns work effectively").

Plaintiffs' efforts to distinguish *Raich* are not convincing. Plaintiffs argue that *Raich*, which dealt with Congress's power to regulate marijuana under the Commerce Clause, should be limited to the national defense concerns implicated in the "war on drugs." There is no language in *Raich* limiting its principles to "national defense" concerns, however, and *Raich* relies on *Wickard v. Filburn*, 317 U.S. 111 (1942), which dealt with Congress's power to regulate wheat. *See Raich*, 545 U.S. at 16. The attempt to read into *Raich* a distinction between the market for firearms and the market for marijuana has already been rejected by our court, as *Stewart* held that the principles of *Raich* apply to the market for firearms.[1]

---

[1] The history of *Stewart*, which involved homemade machine guns, further illustrates that the Supreme Court did not view *Raich* as narrowly limited to its facts. Our first decision in *Stewart* was filed in 2003, as

Finally, plaintiffs have not pursued on appeal any argument that the individual right to bear arms recognized in *District of Columbia v. Heller*, 554 U.S. 570 (2008), supports a different result. Even if they had advanced this argument, we have already held that *Heller* "has absolutely no impact on *Stewart*'s Commerce Clause holding." *Henry*, 688 F.3d at 642.

Congress could have rationally concluded that the manufacture of unlicensed firearms, even if initially sold only within the State of Montana, would in the aggregate substantially affect the interstate market for firearms. Under *Raich* and *Stewart*, that is enough to place the Buckaroo within reach of the long arm of federal law. Because the MFFA purports to dictate to the contrary, *see* Mont. Code Ann. 30-20-104 (providing that conduct conforming to the MFFA is "not subject to federal law or federal regulation"), it is necessarily preempted and invalid. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 133 S. Ct. 2247, 2254 (2013) (explaining that, to the extent a state law conflicts with federal law, "the state law . . . ceases to be operative" (internal quotation mark omitted)).

---

*United States v. Stewart*, 348 F.3d 1132 (9th Cir. 2003). It concluded that Congress could not, under its Commerce Clause power, prohibit mere possession of a homemade machine gun. The Supreme Court granted certiorari in that case, vacated the judgment, and remanded to this court for further consideration in light of *Raich*. *United States v. Stewart*, 545 U.S. 1112 (2005). On remand, our court issued the 2006 decision described in the text.

## VI.    Conclusion

Though we conclude that plaintiff Gary Marbut has standing, we affirm the dismissal of the action for failure to state a claim.

**AFFIRMED.**

---

BEA, Circuit Judge, concurring in part and dissenting in part:

I fully agree with the majority's conclusion that Gary Marbut is subject to federal licensing laws. *Gonzales v. Raich*, 545 U.S. 1 (2005), and *United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006), foreclose Marbut's argument that Congress does not have the authority under the Commerce Clause to regulate the manufacture of unlicensed firearms, even if they are manufactured and initially sold within Montana only.  Had the majority stopped there, I would join the opinion in full.  However, the majority goes a step further and holds that the Montana Firearms Freedom Act is "necessarily preempted" because it purports to say that conduct conforming to the MFFA is not subject to federal regulation.[1]  In my opinion, this section of the opinion is unnecessary.  Once we decide, as we did, that Marbut's conduct falls within the scope of federal regulation, we do not need to pass upon the validity of the MFFA.  True, Marbut

---

[1] Specifically, the MFFA declares that a firearm or ammunition "manufactured . . . in Montana and that remains within the borders of Montana is not subject to federal law or federal regulation, including registration, under the authority of congress [sic] to regulate interstate commerce."  Mont. Code Ann. § 30-20-104.

attempts to use the MFFA as a shield against federal regulation.  But, once we decide that Congress has authority to regulate Marbut's conduct, it is simply irrelevant whether Marbut attempts to cloak himself in the MFFA.

Therefore, I respectfully dissent from the portion of the majority's opinion holding that the MFFA is preempted by federal law.