**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KATIE MAYES, individually and for and on behalf of dependent beneficiaries; J.M., a minor child; H.M., a minor child; M.M., a minor child; G.M., a minor child; K.M., a minor child,

*Plaintiffs-Appellants*,

v.

WINCO HOLDINGS, INC., an Idaho corporation,

*Defendant-Appellee.*

No. 14-35396

D.C. No. 4:12-cv-00307-EJL-CWD

OPINION

Appeal from the United States District Court for the District of Idaho Edward J. Lodge, District Judge, Presiding

Argued and Submitted December 8, 2016 Seattle, Washington

Filed February 3, 2017

Before: M. Margaret Mckeown, Richard C. Tallman, and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

**SUMMARY**[*]

### Employment Discrimination

The panel reversed the district court's summary judgment in favor of the defendant on gender discrimination claims under Title VII and the Idaho Human Rights Act, a claim under the Consolidated Omnibus Budget Reconciliation Act, and wage claims under the Fair Labor Standards Act and the Idaho Wage Claim Act.

WinCo, a grocery store, fired the plaintiff, who supervised employees on the night-shift freight crew, for taking a stale cake from the store bakery to share with fellow employees and telling a loss prevention investigator that management had given her permission to do so.

As to the plaintiff's gender discrimination claims, the panel held that she presented sufficient evidence that WinCo's proffered reasons for terminating her were pretextual because she offered ample direct evidence of discriminatory animus, as well as specific and substantial indirect evidence challenging the credibility of WinCo's motives.

As to the COBRA claim, there was a genuine dispute of fact regarding the true reason for the plaintiff's termination. The panel held that the district court therefore erred in granting summary judgment because if WinCo fired the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

plaintiff for discriminatory reasons, rather than gross misconduct, then she could be entitled to COBRA benefits.

The panel also reversed the district court's summary judgment on the federal and state wage claims, and it remanded the case to the district court.

## COUNSEL

Amanda E. Ulrich (argued) and DeAnne Casperson, Holden Kidwell Hahn & Crapo P.L.L.C., Idaho Falls, Idaho, for Plaintiffs-Appellants.

Anthony Dean Bennett (argued) and Pamela S. Howland, Holland & Hart LLP, Boise, Idaho, for Defendant-Appellee.

## OPINION

CHRISTEN, Circuit Judge:

Plaintiff Katie Mayes worked at WinCo, an Idaho Falls grocery store, for twelve years. During her final years at WinCo, Mayes supervised employees on the night-shift freight crew. On July 8, 2011, Mayes was fired for taking a stale cake from the store bakery to the break room to share with fellow employees and telling a loss prevention investigator that management had given her permission to do so. WinCo deemed these actions theft and dishonesty. It also determined that Mayes's behavior rose to the level of gross misconduct under the store's personnel policies. WinCo denied Mayes and her minor children benefits under the Consolidated Omnibus Budget Reconciliation Act of 1985

(COBRA). WinCo also denied Mayes credit for accrued vacation days.

Mayes argues that WinCo fired her not for theft and dishonesty but in order to put a man in charge of the freight crew. She brings three types of claims against WinCo: (1) gender discrimination claims under Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act; (2) a claim under COBRA; and (3) wage claims under the Fair Labor Standards Act and the Idaho Wage Claim Act. The district court granted summary judgment to WinCo on all claims. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

## I. STANDARD OF REVIEW

We review a district court's order granting summary judgment de novo. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc). "A grant of summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). For purposes of summary judgment, we must accept the nonmoving party's evidence as true. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). "Inferences must also be drawn in the light most favorable to the nonmoving party." *Id.* "If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party." *Id.*

## II.  BACKGROUND

### A.  Factual History[1]

Mayes, a single mother of seven children, began working for WinCo in 1999.  WinCo promoted her to a Person in Charge (PIC) in 2006.  As a PIC, Mayes supervised employees on the night-shift freight crew.  She also began serving in a leadership role on the store safety committee.  According to assistant manager Scott McCartney, Mayes was a hard worker who strived to follow store rules.

Sometimes stocking the store required long hours from the night-shift freight crew.  New freight had to be shelved on the first of the month, and if the job was not finished by the end of the freight crew's shift, crew members clocked out and Mayes was left with thousands of items to shelve.  Mayes testified that when she first became a PIC, Mark Wright, then WinCo's general manager, gave her permission to take cakes from the store bakery to motivate the crew to stay past the end of their shifts and boost their morale.  Wright told Mayes to record the cakes in the in-store use log, and Mayes followed this policy.

In addition to Wright, other members of the management team knew about the practice of taking cakes for the night-shift freight crew.  Mayes testified that when assistant managers Scott McCartney and Brad Clark worked at the store during Mayes's shift, Mayes discussed with them whether to get a cake for the crew before entering it into the in-store use log.  Mayes brought the cakes to the break room,

---

[1] We present the following facts in the light most favorable to Mayes, the nonmoving party, to the extent supported by the record.

where the assistant managers sometimes ate cake with the crew. According to Mayes and a number of other employees, anyone who saw the cakes would have known that they had not been purchased from the store because the cakes did not have receipts attached and store policy required employees to attach receipts to purchased items. Several WinCo employees gave sworn statements that taking cake from the store to the break room was a common, accepted practice by PICs and management at WinCo.

In January 2011, the bakery department instructed Mayes and the other freight crew PIC, Andrew Olson, that they should take cakes only from the "stales" cart. Stale cakes usually went to a food bank because the store could no longer sell them. The bakery department told Mayes that she did not need to enter the cake from the stales cart into the in-store use log because the cakes had already been removed from the store inventory and tracked as lost product. To let the bakery staff know that the freight crew had taken a stale cake, Mayes left the universal product code (UPC) sticker on the stales cart. She instructed her crew that if they ever took a cake for a special event, they should take it only from the stales cart. Mayes discussed this practice with McCartney and Clark. In his deposition, Olson, the other freight crew PIC, confirmed that he, too, understood that PICs could take cakes from the stales cart.

At about the same time the bakery department instructed Mayes to take cakes only from the stales cart, Mayes started experiencing difficulties with Dana Steen, the general manager as of 2007. According to Mayes, Steen replaced Mayes as chair of the safety committee with a male employee, and when she asked Steen for an explanation, Steen told her that "a male would be better in that position."

Mayes testified that when she told McCartney that she thought Steen had treated her unfairly, McCartney advised Mayes to "stay away" from Steen because Steen said she did not like that "a girl" was running the freight crew.

Mayes further asserts that in early 2011, Steen criticized her because she had children and could not stay late or come in on her days off. Mayes testified that she told Steen that she had to leave early to pick up her children from school, and that Steen said "kids," and walked away. According to Mayes, Steen did not make similar comments about kids to Olson, who sometimes also left early because he had to care for his children.

On July 7, 2011, bakery management notified Steen that someone had taken a fresh cake from the bakery store shelves and eaten it in the employee break room. Steen initiated an investigation and reviewed six months of store surveillance video. She saw video footage of freight crew employee Nick McInelly taking the cake. Steen later testified that she also saw footage of Mayes taking one cake from the stales cart on June 26, 2011 and only turned the investigation over to the loss prevention department after she had seen that footage.

Loss prevention investigator Scott Samuelson investigated the cake-taking reports. He visited the Idaho Falls WinCo store on July 7, 2011, to review video footage, in-store use logs, and sales records for the nights that McInelly and Mayes had taken cakes to the break room. Another loss prevention specialist told Samuelson that because management would not be at the store on the night of July 7, McInelly might try to take another cake that night. Watching live footage from a surveillance camera, Samuelson

observed McInelly take another cake in the early morning hours of July 8.

Confronted by Samuelson, McInelly said that Mayes gave him permission to take the cake. But when Samuelson interviewed Mayes, she said that she only gave McInelly permission to take cakes from the stales cart. Mayes also told Samuelson that the previous general manager, Wright, had given her permission to take cakes. Wright denied giving Mayes this authorization.

On the morning of July 8, Steen called Samuelson to discuss the results of the investigation. Steen was on vacation and only available over the telephone. Samuelson then turned the results of his investigation over to WinCo's human resources department (HR). Both McInelly and Mayes were fired later that day. After Mayes was fired, WinCo replaced her with a man who had only one month of freight crew experience and no supervisory experience at WinCo.

McCartney prepared the termination paperwork and told Mayes that WinCo was terminating her for theft and dishonesty. He presented her with a document banning her from WinCo property for 100 years. But McCartney denied making the decision to fire Mayes and suggested that HR and Samuelson were the decisionmakers. Samuelson denied any knowledge of who made the decision to terminate Mayes.

During Mayes's unemployment compensation hearing, Steen testified that she was involved in the termination decision, and WinCo listed Steen in an interrogatory answer as a person who participated in the decision to terminate Mayes. But in Steen's deposition, she, too, denied knowing who made the final decision to fire Mayes and said that she

did not participate in the decision. Steen suggested HR and loss prevention specialist Don Hook made the termination decision. But HR director Karen Stinger testified that she did not remember being involved in Mayes's termination, and Hook testified that, other than speaking with Wright, he played no role in the decision to terminate Mayes. Who ultimately decided to fire Mayes for theft and dishonesty thus remains a mystery.

Because the definition of "gross misconduct" in WinCo's personnel policies includes theft and dishonesty, WinCo denied Mayes COBRA benefits. *See* 29 U.S.C. § 1163(2) (excluding termination for "gross misconduct" from list of qualifying events). As a result, Mayes was unable to elect continued coverage for herself and her minor children. WinCo also refused to pay Mayes her accumulated vacation pay, claiming that it had no obligation to do so under the store's Collective Bargaining Agreement (CBA). Mayes appealed to the employee grievance committee, but the committee upheld the termination decision.

## B. Procedural History

Mayes sued WinCo on June 15, 2012. WinCo moved for summary judgment on all claims. The district court granted the motion on April 23, 2014, ruling that although Mayes established a prima facie case of discrimination, she did not present sufficient evidence of pretext for her claims to survive summary judgment. The district court also found that, because WinCo terminated Mayes for gross misconduct, WinCo properly denied her COBRA benefits and credit for accrued vacation under the CBA. Mayes appeals.

## III.  ANALYSIS

### A.  Gender Discrimination Claims

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).  The Idaho Human Rights Act mirrors the protections of Title VII, so we need not conduct a separate analysis of Mayes's state claim.  *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *see also* Idaho Code § 67-5909.

Title VII's burden-shifting formula requires that plaintiffs first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* (Jan. 2, 2004).  If the plaintiff succeeds in doing so, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct."  *Vasquez*, 349 F.3d at 640.  If the employer articulates "such a reason, the burden shifts back to the [employee] to show that the employer's [stated] reason is a pretext for discrimination."  *Id.*

Here, the district court concluded that Mayes established a prima facie case under *McDonnell Douglas*, and WinCo concedes this point on appeal.  Similarly, Mayes does not contest that WinCo proffered legitimate, nondiscriminatory reasons for terminating her.  The outcome of Mayes's appeal turns on whether she presented sufficient evidence that WinCo's proffered reasons were pretextual.

An employee can prove pretext either: (1) "directly, by showing that unlawful discrimination more likely motivated the employer"; or (2) "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004) (internal quotation marks omitted) (quoting *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002)). The district court ruled that Mayes failed to raise a genuine issue of material fact regarding pretext, either directly or indirectly. We disagree.

Direct evidence of discrimination is often not easy to come by. Here, however, Mayes has offered multiple examples of direct evidence that implicate gender discrimination. Direct evidence of discriminatory intent consists of "evidence which, if believed, proves the fact [of discriminatory animus] *without inference or presumption*." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 662 (9th Cir. 2002) (alteration in original) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)). "Racist or sexist statements constitute such 'direct evidence' of discrimination." *Id.* (quoting *Godwin*, 150 F.3d at 1221). Direct evidence need not be "specific and substantial." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005).

Mayes offered ample direct evidence of discriminatory animus: (1) Steen's alleged comment that a man "would be better" leading the safety committee; (2) Steen's alleged comment that she did not like "a girl" running the freight crew; and (3) Steen's alleged criticism of Mayes, but not her male counterpart, for leaving work early to care for her children. These remarks directly concerned Mayes and the

decisional process for retaining and promoting employees. Mayes's failure to give precise dates for the remarks or show a closer temporal link between the comments and her termination does not defeat her claims. *See id.* ("While a factfinder is free to conclude at trial that the plaintiff's account is insufficiently detailed to be believable, the district court must refrain from making such credibility assessments on summary judgment."); *cf. DeHorney v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 879 F.2d 459, 467–68 (9th Cir. 1989) (affirming an order granting summary judgment on the basis that there was no "nexus" between the discriminatory remark and plaintiff's termination where plaintiff failed to present evidence that the decisionmaker heard discriminatory statements or knew plaintiff's race).

WinCo argues that Steen's comments cannot constitute direct evidence of discriminatory animus because Steen did not fire Mayes. But the record on this point is murky, at best. In an interrogatory answer, WinCo admitted that Steen participated in the termination decision. Steen also testified in the unemployment hearing that she was involved in the decision. Steen further stated in her deposition that during the cake-taking investigation, she was in contact with McCartney, the employee who informed Mayes that she was being terminated.

Moreover, the animus of a supervisor can affect an employment decision if the supervisor "influenced or participated in the decisionmaking *process*." *Dominguez-Curry*, 424 F.3d at 1039–40 (emphasis added). Even if the supervisor does not participate in the ultimate termination decision, a "supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from

the supervisor's recommendation, entirely justified." *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011).

WinCo argues that there is insufficient evidence that Steen affected its "independent" investigation into Mayes's conduct for two reasons. First, WinCo disputes when Steen learned that the cake-taking investigation would lead to Mayes. But Steen acknowledged during the unemployment compensation hearing that she contacted loss prevention only *after* viewing surveillance footage of Mayes taking stale cake. Second, WinCo argues that it had a good-faith belief that Mayes lied about having permission to take cake and that this insulates the termination decision from any discriminatory motive Steen may have had. This argument fails because no one at WinCo admitted to making the decision to fire Mayes, and it is impossible to know who believed what at the time Mayes was fired. Drawing all reasonable inferences in Mayes's favor, we must presume that Steen's alleged bias affected the employment decision. *See Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1129 (9th Cir. 2000).

Nor do Steen's comments fall within the ambit of stray remarks that we have held insufficient to establish discrimination. *See Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438–39 (9th Cir. 1990) (holding that a hiring executive's comment that he chose "a bright, intelligent, knowledgeable young man" over the plaintiff was merely a stray remark that could not, without more, establish age discrimination). If Mayes's testimony is believed, reasonable jurors could decide that Steen's comments, including the alleged comment that a man "would be better" as chair of the safety committee, demonstrate Steen's overt hostility to having women in leadership roles.

WinCo argues that we must take into account the context in which Steen's alleged comments were made and that the evidence here falls short of the evidence that established discriminatory animus in cases such as *Dominguez-Curry*, 424 F.3d at 1038, and *Cordova v. State Farm Insurance Cos.*, 124 F.3d 1145, 1149 (9th Cir. 1997). In *Dominguez-Curry*, a supervisor allegedly made sexist comments such as "women have no business in construction," and we rejected the defendant's argument that these were stray remarks. 424 F.3d at 1038. Similarly, in *Cordova*, a supervisor allegedly made two disparaging comments about a Mexican-American employee, including calling the employee a "dumb Mexican." 124 F.3d at 1147–49. We see no distinction between the alleged bigoted remarks in these cases and the alleged comments that a man would be better as chair of the safety committee and that Steen did not like "a girl" running the freight crew or the disparaging insinuations about Mayes leaving work to pick up her children.

Finally, contrary to WinCo's position, the fact that Steen is also a woman does not preclude a finding of discriminatory animus. Nearly twenty years ago, the Supreme Court held in no uncertain terms, "If our precedents leave any doubt on the question, we hold today that nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) (alteration in original).

Mayes's direct evidence alone is sufficient to defeat summary judgment, *see Dominguez-Curry*, 424 F.3d at 1039 ("[W]e have repeatedly held that a single discriminatory comment by a plaintiff's supervisor or decisionmaker is

sufficient to preclude summary judgment for the employer."), but here, the claim is further bolstered by indirect evidence. To show pretext using circumstantial evidence, in contrast to direct evidence, "a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez*, 349 F.3d at 642. Mayes met this burden for purposes of summary judgment.

Multiple employees testified that it was a common, accepted practice—rather than an offense punished by termination—for PICs to take cakes to the break room. Olson, the other PIC for the freight crew, stated that he understood that PICs could take stale cakes from the stales cart. That WinCo purportedly fired Mayes for following a practice described by some witnesses as "common," and that another PIC thought was authorized, is specific and substantial evidence that WinCo's proffered explanation for her termination is not believable. Mayes could not have stolen a cake that she had permission to take. Nor could management have reasonably thought that Mayes lied about having permission if they knew that PICs were allowed to use stale cakes to motivate employees.

Additionally, Mayes presented evidence that WinCo replaced her with a less qualified male employee. Evidence that an employer replaced a plaintiff with a less qualified person outside the protected class can be evidence of pretext. *See Perez v. Curcio*, 841 F.2d 255, 258 (9th Cir. 1988) (reversing a grant of summary judgment on an age discrimination claim where plaintiff presented evidence that

a younger, less qualified person was chosen to replace her).**²** The man who replaced Mayes had only worked for WinCo for about three weeks, had no supervisory experience at WinCo, and could only work during limited hours.  In contrast, Mayes received no negative performance reviews over the course of twelve years with WinCo, earned promotions within the company, and held a supervisory position for approximately five years.

WinCo argues that replacing Mayes with a male employee is not evidence of pretext because Steen played no role in hiring Mayes's replacement.  The record is to the contrary.  McCartney testified that Steen participated in the interviews for Mayes's replacement and had the "final say" on the new PIC for the freight crew.  In her deposition, Steen acknowledged that she "weigh[ed] in" on the decision.

In sum, circumstantial evidence raises a material dispute of fact regarding pretext.  This is particularly true when the circumstantial evidence is viewed in conjunction with the powerful direct evidence of Steen's discriminatory comments.  It was error to dismiss Mayes's discrimination claims.

---

**²** The Second Circuit case cited by WinCo, *Brennan v. Metropolitan Opera Assoc., Inc.*, 192 F.3d 310 (2d Cir. 1999), is not to the contrary. WinCo argues that this case stands for the proposition "that evidence that plaintiff was replaced by a substantially younger employee, while sufficient to meet her *prima facie* case of age discrimination, was insufficient to show pretext."  It does not.  The Second Circuit held only that the plaintiff had not presented sufficient evidence of pretext for her age discrimination claim to survive summary judgment because her employer thought that the plaintiff and her replacement were the same age based on the plaintiff's own misrepresentations.  *Id.* at 313, 317.

## B. COBRA Claim

Generally, COBRA entitles an employee with employer-provided health insurance to elect continued coverage for a defined period of time after the end of employment. *See* 29 U.S.C. § 1161(a). An employee is not entitled to this benefit if she is terminated for "gross misconduct," but the statute does not define "gross misconduct." *See* 29 U.S.C. § 1163(2).

As discussed, Mayes presented both direct and indirect evidence that the reasons stated for her termination were pretextual, and we conclude there is a genuine dispute of material fact regarding the true reason for her termination. If WinCo fired Mayes for discriminatory reasons, Mayes may be entitled to COBRA benefits. The district court therefore erred in dismissing Mayes's COBRA claim at summary judgment.

## C. Wage Claims

WinCo argues that the CBA precludes Mayes's federal and state wage claims. The CBA provides that "[v]acation earned but not taken will not be paid to employees terminated for gross misconduct under the Company Personnel Policies defining gross misconduct." Because Mayes presented sufficient evidence to create a genuine dispute of material fact regarding why WinCo fired her, Mayes may be entitled to payment for accrued vacation time, and this claim should not have been dismissed at summary judgment.

**CONCLUSION**

We conclude that it cannot be determined at summary judgment whether WinCo's stated reasons for firing Mayes were pretextual. We reverse the order granting summary judgment on all claims and remand for proceedings consistent with this opinion.

Appellee shall bear costs on appeal.

**REVERSED AND REMANDED.**