**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MIRASOL J. REYES, | No. 15-16459 |
| Plaintiff-Appellant, | D.C. No. 4:13-cv-05181-JSW |
| v. | |
| CHECKSMART FINANCIAL, LLC; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Submitted May 19, 2017[**]
San Francisco, California

Before: KLEINFELD and WARDLAW, Circuit Judges, and BENCIVENGO,[***]
District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Cathy Ann Bencivengo, United States District Judge for the Southern District of California, sitting by designation.

Marisol Reyes appeals from the district court's dismissal of her claim under California's Deferred Deposit Transactions Law ("CDDTL") for lack of statutory standing, and its grant of summary judgment on her meal and rest break and constructive discharge claims. We have jurisdiction under 28 U.S.C. § 1291. We review the dismissal and summary judgment de novo, *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th Cir. 2017) (summary judgment); *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013) (motion to dismiss), and we affirm.

1. The district court did not err in dismissing Reyes's claim under the CDDTL. Because Reyes did not enter into transactions with the defendants that violated the CDDTL, she did not fall into the zone of interests the CDDTL was intended to protect. As a result, she lacked statutory standing to assert a claim for violation of the CDDTL. *Cf. Lexmark Int'l, Inc.v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1388-90 (2014).

Further, because Reyes had Article III standing, we may affirm the dismissal of her CDDTL claim and need not remand it to state court. In her complaint, Reyes alleges that she was required to train tellers to offer the "Manager's Special," a transaction that allegedly violated the CDDTL. She alleges that she resigned due to the stress of being complicit in Checksmart's illegal activities. These allegations meet the three requirements for Article III standing. Loss of employment is certainly an

2

"injury in fact." And, if the allegations in her complaint are taken as true, she resigned because of the stress of participating in Checksmart's illegal conduct, making her injury "fairly traceable" to Checksmart's actions. Finally, her loss of employment was "redressable" with an award of damages.

The dissent contends that Reyes's resignation was not fairly traceable to Checksmart's alleged CDDTL violations. It argues that CDDTL violations can injure only a customer who received a loan, not an employee like Reyes who merely offers the loan. That argument, however, goes to whether Reyes can state a claim under the CDDTL, not to whether she has Article III standing. *Cf. Lexmark Int'l*, 134 S. Ct. at 1390; *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 176–77 (2011).

2. California law requires employers to provide nonexempt employees meal and rest periods. However, it does not require employers to ensure that employees use their meal and rest breaks:

> the employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay. . . .

*Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040-41 (2012). Reyes did not offer any evidence on summary judgment that Checksmart did not provide her

3

with meal and rest breaks. Accordingly, the district court did not err in granting summary judgment on Reyes's meal and rest break claims.

3. The district court did not err in granting summary judgment on Reyes's claim for constructive discharge in violation of public policy. "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244 (1994).

There are "'[t]hree areas of inquiry' to test whether a constructive discharge claim can be proved": (1) whether there were intolerable conditions; (2) "whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit"; and (3) whether the employee's resignation was "*employer*-coerced, not caused by the voluntary action of the employee or by conditions or matters beyond the employer's reasonable control." *Casenas v. Fujisawa USA, Inc.*, 58 Cal. App. 4th 101, 113-14 (Cal. Ct. App. 1997) (quoting *Turner*, 7 Cal. 4th at 1245-46, 1248) (emphasis in original) (internal quotation marks and citations omitted). In sum, "to establish a constructive discharge, an employee must plead and prove . . . that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that

a reasonable person in the employee's position would be compelled to resign." *Turner*, 7 Cal. 4th at 1251.

Because Reyes did not offer evidence on summary judgment that her working conditions were intolerable such that any reasonable person faced with such conditions would have no reasonable alternative but to quit, the district court correctly granted summary judgment on this claim.

**AFFIRMED.**

*Reyesv. Checksmart Finanacial, LLC,* 15-16459

Bencivengo, J., concurring in part and dissenting in part:

I concur that the district court properly granted summary judgment on Reyes's meal and rest break and constructive discharge claims. I also agree that Reyes lacks statutory standing to state a claim under California's Deferred Deposit Transactions Law ("CDDTL"). However, I dissent from the majority's affirmance of the district court's dismissal of the CDDTL claim for lack of statutory standing because Reyes's lacked Article III standing for her CDDTL claim, meaning the district court should have remanded that claim to state court without considering whether she had statutory standing.

"The requirement that jurisdiction be established as a threshold matter is inflexible and without exception; for jurisdiction is power to declare the law, and without jurisdiction the court cannot proceed at all in any cause." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-95 (1998)) (internal brackets, ellipses, citations and quotation marks omitted). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

The "zone of interests" inquiry used by the district court to determine

whether Reyes had statutory standing to assert a CDDTL claim is merely a matter of statutory interpretation, and is not jurisdictional. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386-88 n.4, 1391 n.6 (2014). It is incumbent upon federal courts to determine whether Article III standing exists before turning to the question of statutory standing. *Steel Co.*, 523 U.S. at 93-102; *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.") (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

"Art[icle] III [of the Constitution] requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotation marks and citations omitted). This standing to sue doctrine is derived from Article III's limitation of the judicial power of federal courts to "actual cases or controversies." *Spokeo*, 136 S.Ct. at 1547 (citing *Raines*, 521 U.S. at 818). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal

2

court to seek redress for a legal wrong." *Id.* "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Reyes's CDDTL claim does not satisfy the second requirement.

Reyes was never received a loan from Checksmart but alleged that Checksmart required her, as an employee, to encourage customers to use products that violate the CDDTL and to encourage other Checksmart employees to do the same. According to Reyes, she was damaged by Checksmart's alleged CDDTL violations insofar as she was forced to quit and lost her wages and benefits because of the violations. **ER 491.**

Assuming the truth of these allegations, Reyes's injuries related to her discharge are not traceable to any alleged CDDTL violation; they are traceable to Checksmart's alleged job requirement that Reyes offer customers loans that Reyes believed would violate the CDDTL. Assuming Checksmart actually provided loans to customers in violation of the CDDTL, Reyes could not have suffered any injury in fact traceable to those violations because she was not a customer who received a loan. Moreover, Reyes's alleged injury would have occurred regardless

3

of whether Checksmart actually provided a customer a loan that violated the CDDTL because Reyes alleges that she was forced to resign merely because she had to offer customers allegedly illegal loans. Reyes even admits in her opening brief that her injury resulted from "refusing to sell the prohibited practices to her supervisees and customers, and not directly the result of a payday loan" that violated the CDDTL. **Blue Brief at 20.** Thus, Reyes's injury is traceable to her working conditions and alleged violations of labor and employment laws, not any alleged CDDTL violation.

To hold that Reyes has Article III standing here would effectively allow any employee who concludes that her employer is violating a statute to have Article III standing (though not necessarily statutory standing) to assert a claim under that statute. Indeed, if Reyes's alleged stress is fairly traceable to an alleged CDDTL violation, the "fairly traceable" requirement does not put any limit on Article III standing.

In sum, because any injury suffered by Reyes was not traceable to any violation of the CDDTL by Checksmart, Reyes lacked Article III standing to bring a claim under the CDDTL.

This case was removed to federal court, raising the question of how the district court should have proceeded in light of Reyes's lack of Article III standing.

4

When a plaintiff lacks Article III standing for an entire removed case, the district court must remand the entire case, not dismiss it. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). However, when a plaintiff lacks Article III standing for only some of the claims in a removed case, and the federal court has subject matter jurisdiction over the remaining claims, the district court may not remand the entire case. *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1007-08 (9th Cir. 2001).

The panel in *Lee* declined to address whether a partial remand of only the standing-deficient claims is required or within the district court's discretion. However, the *Lee* opinion noted that "[i]n some cases, a plaintiff might forfeit an otherwise viable state-law claim because that claim was part of a removed diversity case which was subsequently determined to be beyond the federal court's power to decide, a result which might militate in favor of remanding, rather than dismissing, nonjusticiable state-law claims." *Id.* at 1006-07. Further, the Supreme Court has acknowledged that "one might also read the [§ 1447(c)] reference to 'case' to include a claim within a case as well as the entire case." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998).

5

A federal court lacking subject matter jurisdiction over a claim should not engage in a hypothetical analysis of whether dismissal of that claim will effectively prohibit the plaintiff from pursuing it in state court due to statute of limitations issues or otherwise. The state court should decide whether the plaintiff can pursue the standing deficient claim in state court, where the plaintiff initially pled it. To the extent a partial remand of standing deficient claims will result in duplicative litigation, such result is preferable to a federal court enabling defendants to prevent plaintiffs from seeking relief for claims for which they have standing in state court, but not under Article III, by removing the entire case. If a plaintiff does not want to engage in parallel litigation, it would be free to dismiss the remanded claims in the state court. On the other hand, for defendants, duplicative litigation is simply a risk they should consider when removing a case where the plaintiff's Article III standing is questionable.

In light of the foregoing, the district court should have severed the CDDTL claim and remanded it to state court as a result of Reyes's lack of Article III standing.